UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X   1:17-cv-04071
Michael Pizzirusso, individually and on behalf of all
others similarly situated,

                          Plaintiff,

        - against -                                   COMPLAINT

World Waters LLC and World Waters Holdings, LLC,

                          Defendants.
----------------------------------------------------------------------X

      Plaintiff Michael Pizzirusso ("plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

      1.    Defendants World Waters LLC ("defendant WW") and World Waters Holdings, LLC ("defendant WWH") (collectively, "defendants") manufacture and sell juice products to consumers under the brand "WTRMLN WTR" (the "Product Line").

      2.    The Product Line juices are all sold in 12 ounce bottles and includes WTRMLN WTR ("Watermelon") (also sold in 33.8 ounce bottles), WTRMLN GNGR ("Watermelon Lemon Ginger"), WTRMLN LME ("Watermelon Lime"), WTRMLN CHRRY ("Watermelon Tart Cherry") and WTRMLN LMN ("Watermelon Lemonade") (collectively, the "Products").[1]

      3.    The Products and labels differ to the extent of the fruits and vegetables used for each flavor, though the representations are substantially similar or identical with respect to material information which applies across the Product Line.

---

[1] Subsequent references to WTRMLN WTR will be referring to the product and not the product line, unless otherwise indicated.

4. The Products are sold from brick-and-mortar stores and the Internet, where they are sold directly from defendants and third-party companies.

5. The ingredient list for WTRMLN WTR indicates it contains watermelon and lemon juice, listing "Watermelon Flesh, Watermelon Rind & Organic Lemon":



6. Watermelon is represented as present in WTRMLN WTR through (1) vignette – the plastic wrapping of the bottle represents a watermelon with pink fruit and white and green parts of the rind and (2) words on the principal display panel – "Cold Pressed Watermelon," "WTR MLN WTR" and "Cold Pressed Juiced Watermelon":



7. Lemon juice is not represented as present in WTRMLN WTR, nor does its common or usual name of "Cold Pressed Juiced Watermelon" (below) reflect that it is a multiple-juice beverage.



8. The WTRMLN WTR label and name is deceptive and misleading because it falsely represents that it consists of only watermelon juice, overstating its contribution, when it is actually blended with the non-represented lemon juice.

9. The ingredient lists for all of the Products are misleading and deceptive, because defendant overstates the contribution of watermelon, by separately listing "Watermelon Flesh" and "Watermelon Rind," instead of using the common or usual name for this ingredient, which would either be "Watermelon" or "Watermelon Juice."

10. This is deceptive since it "crowds out" the non-watermelon ingredients, making it appear that the Products may have more watermelon juice relative to other juices and is designed to evoke a stronger connection to the watermelon than other watermelon-based products, which list ingredients in a straightforward and non-misleading way.

11. For example, WTRMLN WTR's ingredients appear as two-thirds watermelon, one-third lemon, instead of lemon juice being one of two with watermelon juice.

12. The common or usual names provided by defendants are as follows:

| Product Name | Common or Usual Name |
|---|---|
| WTR MLN WTR | Cold Pressed Juiced Watermelon |
| WTR MLN CHRRY | Cold Pressed Juiced Watermelon + Cherry |
| WTR MLN GNGR | Cold Pressured Juiced Watermelon Lemon + Ginger Blnd |
| WTR MLN LME | Cold Pressured Juiced Watermelon Lime + Lemon Blnd |
| WTR MLN LMN | Cold Pressured Juiced Watermelon + Lemon Blnd |

13. Defendants' website states "Cold-pressed is a means of juicing fruits or vegetables by applying tremendous pressure exerted by a Hydraulic Press."

14. Cold pressing is the first main production step used by defendant to manufacture the Products. This entails the shredding of fruits and/or vegetables into a pulp, using a steel rotating disc. The fruits and vegetables are loaded into a large hopper feeding tube and falls into a filter bag. Multiple tons of hydraulic pressure are applied to the shredded produce, causing juice and water from the produce to drip into a collection tray, while fiber and pulp remain in the filter bag. The liquid is then bottled and labeled.

15. Whether or not a product is cold pressed has a material bearing on the price and acceptance of the product, since the cold pressed designation indicates to consumers that the juice products are fresh and not processed, produced within 3-5 days of whenever it's consumed (or else it would spoil and be discarded) and that its composition has not been modified by subsequent processing or treatment steps, such as high pressure processing, which would extend its shelf-life to 6 weeks.

16. To a reasonable consumer, "cold pressed" refers to at least two distinct qualities, reflective of its usage as a verb (past tense of "cold press"; to cold press) and as an

adjective, describing the attributes and composition of a juice made through this method. Moreover, consumers interpret a product's labels as describing its final, consumable form.

17. Defendants' introduction of the "Cold Pressured" Products was after several years of WTRMLN WTR ("Cold Pressed Juiced Watermelon") being their only Product.

18. Because WTRMLN WTR is more widely available than the "Cold Pressured" Products, consumers will see the "Cold Pressed" and "Cold Pressured" Products are from the same company, in similar bottles, with identical fonts and slogans, at similar or identical prices, and reasonably interpret "Cold Pressed" as indistinct from "Cold Pressured."

19. "Cold Pressured" is confusingly similar in appearance and sound to "cold pressed," and is not distinguishable from "Cold Pressed." While "Cold Pressured" purports to emphasize "Pressure[d]," cold pressing involves a significant amount of pressure as well.

20. After being cold pressed, defendant's products undergo high pressure processing, with the bottles placed into a cylindrical vessel and pressurized at levels up to 87,000 pounds per square inch ("psi").

21. This pressure causes (1) the temperature of the contents of the bottles to increase, (2) structural changes to cell membranes, (3) inactivation of enzyme systems, which control metabolic reactions within the products, extending their shelf life and (4) a reduction in the most resistant microorganism of public health concern which was present in the cold pressed juice by at least 100,000-fold.

22. The high pressure reduces and degrades enzymatic, biological and cellular activity and overall nutrient content, to an extent that is material to a reasonable consumer.

23. Identical or similar juice products, which are cold pressed followed by high pressure processing, bear the name "High Pressure Processed," since this expresses in clear

terms what distinguishes them from other juice products.

24. Because cold pressed juice is the name established by common usage for juice sold after only being cold pressed, "Cold Pressed Juice[d]" and "Cold Pressured Juice[d]" are false, deceptive and misleading names and descriptions for the Products.

25. Defendants' Product names are not uniform with all identical or similar products, which renders them misleading and deceptive. For example, Bolthouse Farms and Starbucks produce juices by cold pressing, then high pressure processing. However, each non-deceptively names and labels their products as "High Pressure Processed," while defendants stray from the pack with its "Cold Pressed" and "Cold Pressured" names:

**Defendant**





**Bolthouse Farms**



**Starbucks**



26. Defendants' website contains the following question and answer: "Is WTRMLN WTR pasteurized? No. WTRMLN WTR is never heated. It is produced using a High Pressure Process (HPP) that protects the enzymes and nutrients, but eliminates the micro-organisms."

27. The representations of the Products as not pasteurized and never heated, respectively, are false, deceptive and misleading because (1) no relevant legal authority defines pasteurization for this product and (2) high pressure processing causes the contents of the bottles to increase in temperature and become heated.

28. The term "pasteurization" was originally used to refer to the application of heat to achieve a food safety effect so that a product is made safe for human consumption.

29. The definition and understanding of pasteurization or pasteurized has broadened, and today these terms refer to a food safety effect achieved through any food safety technology - not limited to the application of heat - as long as the effect is the same as achieved by currently understood traditional thermal treatments.

30. In the context of defendants' products, pasteurization generally refers to a process or treatment which achieves at least a 100,000 fold reduction of the most resistant microorganism of public health concern under normal conditions of distribution and storage.

31. Reasonable consumers, including plaintiff, are not aware that pasteurization

can be achieved without thermal treatment. Upon observing the representations that the Products are cold pressed, cold pressured, never heated and not pasteurized, they will pay a price premium for such products, believing they have not been treated after the first production step.

32.     The Products cost between $2.99 and $5.99 for the 12 ounce bottles, a premium compared to other juice products with a similar shelf-life and manufactured in multiple, similar production steps.

33.     Other companies use high pressure processing instead of thermal treatment to reduce the most resistant microorganisms and do not make similar claims to defendants:

**Bolthouse Farms**



**Starbucks**

34.     Bolthouse Farms represents their products as "not heat pasteurized" while Starbucks states it uses high pressure "instead of heat pasteurizing."

35. Defendants' failure to accurately and non-deceptively label the Products is misleading in its own right and when considered in light of comparably manufactured products which are not labeled deceptively.

36. The Products contain numerous claims regarding health benefits and nutrient content which are deceptive and misleading to consumers.

## Jurisdiction and Venue

37. Jurisdiction is proper pursuant to 28 USC § 1332(d)(2).

38. Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

39. This Court has personal jurisdiction over defendants because each conducts and transacts business, contracts to supply and supplies goods, within New York.

40. Venue is proper because plaintiff and many class members reside in this District and defendants have been doing business in this District and in New York.

41. A substantial part of events/omissions giving rise to the claims occurred in this District.

## Parties

42. Plaintiff is a citizen of Richmond County, New York.

43. Defendant World Waters LLC is a New York limited liability company and defendant World Waters Holdings, LLC is a Delaware limited liability company. Defendants operate jointly in a common enterprise, sharing officers, assets and inventory.

44. In January 2017, plaintiff purchased WTRMLN WTR for no less than $4.99, excluding tax, at a store within this District.

45. Plaintiff paid a premium for WTRMLN WTR because prior to purchase, he

saw and relied upon the above-referenced representations for WTRMLN WTR.

46. Plaintiff purchased WTRMLN WTR because he intended to consume a product which possessed the attributes and features which were represented by defendant as being associated with WTRMLN WTR.

47. Plaintiff purchased WTRMLN WTR for personal consumption and opted against buying less expensive juice products not represented like defendant's.

## Class Allegations

48. Defendants' false, misleading and deceptive representations uniformly impacted its consumers.

49. The class is all consumers in all states who purchased any of the Products, at any time during the period within the applicable statute of limitations.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as this case meets the criteria of Rule 23 of the F.R.C.P.

51. The class is so numerous that joinder of all members, even if permitted, is impracticable. Plaintiff believes hundreds of thousands of consumers are class members who have been damaged by defendants' practices.

52. Common questions of law or fact predominate and include whether (i) defendants are responsible for the consumer-directed conduct, (ii) the representations were likely to deceive reasonable consumers and (iii) plaintiff and class members are entitled to money damages.

53. Plaintiff is a class member with claims typical of other members, in that every member was susceptible to the same representations and purchased the Products. Plaintiff is entitled to relief under the same causes of action as other class members.

54. Plaintiff is an adequate class representative because his interests do not conflict with those of class members he seeks to represent and he has a strong interest in vindicating his rights.

55. Plaintiff's counsel is competent and experienced in complex class action litigation of consumer protection issues and they intend to vigorously prosecute this action and adequately and fairly protect class members' interests.

56. No inquiry into individual conduct is necessary since the focus is only on defendants' practices, and the class is definable and ascertainable. Individual actions (i) risk inconsistent adjudications, (ii) would be repetitive and burdensome, and (iii) impractical to justify as the individual claims are modest.

57. Because the practices continue, plaintiff seeks class-wide injunctive relief basis as a remedy for such practices.

58. The injunctive class should be maintained as a class action under Rule 23 because it meets the criteria of numerosity, commonality, typicality, and adequacy on the same grounds as described for the non-injunctive class.

59. The injunctive class has a common cause to limit defendants' ability to continue the conduct complained of.

## Violation of New York General Business Law § 349

60. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

61. Defendants' acts or practices are material, not unique to the parties and have a broader impact on the public and consumers.

62. Plaintiff and class members relied on defendants' representations that (1)

WTRMLN WTR only contained watermelon juice and (2) the Products (i) were cold pressed juice, (ii) not subjected to a pasteurization process and (iii) did not experience an increase in temperature or become heated.

63. Relying on these representations, plaintiff and class members paid more for the Products than they would have paid and did not receive all that they bargained for.

64. As a result, plaintiff and class members are entitled to damages.

## Violation of New York General Business Law § 350

65. Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

66. Defendants' false advertising is material to consumers, not unique to the parties and has a broader impact on the public at large.

67. Plaintiff and class members relied on defendants' representations that WTRMLN WTR only contained watermelon juice and the Products were cold pressed juice.

68. Defendants' Products do not disclose that they were subjected to an additional and distinct production step after being cold pressed. It is deceptive and misleading for defendants to tell only "half the story," which unsurprisingly is the half that consumers desire and value highly (cold pressed).

69. Relying on these representations, plaintiff and class members paid more for the Products than they would have paid and did not receive all that they bargained for.

70. As a result, plaintiff and class members are entitled to damages.

## Fraud

71. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

72. WTRMLN WTR is represented as only consisting of juice derived from watermelon, a material fact that is false, because it also consists of lemon juice.

73. Defendants knew that WTRMLN WTR contained lemon juice because it is contained in the ingredient list.

74. Promoting a product named "Fruit Juice Blend of Watermelon Juice and Lemon Juice" would not be as enticing to consumers as one with an alliterative name like "Watermelon Water."

75. When sugary drinks such as juice and soda are criticized for contributing to obesity and health-related ailments, the alternative promoted is almost universally water. While WTRMLN WTR has fewer calories and less sugar than if it only consisted of watermelon, it still contains 90 more calories than water.  Moreover, if the Product contained only watermelon juice, the caloric and sugar content would have made other label claims impossible to sustain.

76. In the service of positive exposure, defendants intentionally decided to manufacture a product that did not exclusively contain watermelon juice, despite representations to the contrary, figuring that the benefits from a catchy name outweighed the risk of misleading consumers, and that by the time anyone caught on, defendants would have achieved the scale and size to dispose of or deal with such objections.

77. Defendants' actions give rise to and support a strong inference of fraudulent intent.

78. As a result, plaintiff and class members are entitled to damages.

### Implied Warranty of Merchantability

79. Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

80. Defendants manufacture, distribute and sell juice, and warranted to plaintiff and class members that (1) the WTRMLN WTR Product consisted only of watermelon juice, (2) the Products were not subjected to production steps after being cold pressed and (3) the Products were not pasteurized nor subjected to an increase in temperature and heated.

81. The Products do not conform to the affirmations of fact and promises on the Products and the accompanying literature, wholly due to defendants' actions.

82. As a result of breaching the implied warranty of merchantability, plaintiff and class members were damaged in the amount paid for the Products.

## Unjust Enrichment

83. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84. Defendants obtained benefits and monies because the Products were not as represented, to the detriment and/or impoverishment of plaintiff and class members.

85. Plaintiff and class members seek restitution and disgorgement of the inequitable profits obtained by defendants.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1. Declaring this a proper class action and certifying plaintiff as class representative;
2. Entering preliminary and permanent injunctive relief and directing defendants to correct their practices to comply with the law;

3. Awarding monetary damages and interest, including treble damages, pursuant to GBL §§ 349, 350, and punitive damages;

4. Awarding plaintiff and class members costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court may deem just and proper.

Dated: July 8, 2017

Respectfully Submitted,

Levin-Epstein & Associates, P.C.

By:   /s Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

*Counsel for Plaintiff*

Sheehan & Associates, P.C.

By:   /s Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

*Counsel for Plaintiff*

1:17-cv-04071
United States District Court
Eastern District of New York

Michael Pizzirusso, individually on behalf of himself and all others similarly situated,

        Plaintiff,

  - against -

World Waters LLC and World Waters Holdings, LLC,

        Defendants.

## Complaint

**Levin-Epstein & Associates, P.C.**
**1 Penn Plaza**
**Suite 2527**
**New York, NY 10119**
**Tel: (212) 792-0046**
**Fax: (212) 563-7108**
**joshua@levinepstein.com**

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: July 8, 2017
      New York, New York

                                      /s Joshua Levin-Epstein
                                      Joshua Levin-Epstein